IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **MIRIAM M. GARZA** | § | |
| | § | |
| v. | § | A-12-CV-475-AWA |
| | § | |
| **RANIER L.L.C., et al.** | § | |

## ORDER

Before the Court are: Defendants' Opposed Motion for Summary Judgment (Dkt. No. 17); Plaintiff's Response (Dkt. No. 18); and Defendants' Reply (Dkt. No. 19). The parties have consented to proceed in this case before the undersigned magistrate judge.

### I. Factual Background

Plaintiff Miriam M. Garza ("Garza" or "Plaintiff") is a Mexican American female. Plaintiff's Original Complaint at p. 4. Plaintiff was employed by Ranier Management, Ltd.[1] ("Ranier") beginning in January 2008. Ranier manages seventeen multi-family apartment communities in Austin, Texas. Affidavit of Kathy Hull at p. 1. Garza began her employment with Ranier as a property manager in charge of an individual property. *Id.* at p. 2. Subsequently, she was promoted to an area manager position in charge of multiple properties. *Id.* at p. 2-3. During her three-year employment with Ranier, Garza received raises and was promoted. *Id.* at p. 3. She also received two written warnings for failure to follow company policy – one in 2008 and one in 2010. *Id.* On February 10, 2011, Garza's supervisors, Kathy Hull and Dawn Mooty, conducted a performance review of Garza. Exhibit 12 to Garza Deposition. After the performance review, Mooty prepared a summary of Garza's performance issues highlighting various areas of weakness. Affidavit of Kathy Hull at p. 4. Garza alleges that in June of 2011, Hull informed Garza that Garza's management style

---

[1] Ranier LLC is the general partner of Ranier Management, Ltd. Factual Appendix at p. 1.

was "ghetto." Plaintiff's Original Complaint at p. 4.  On August 8, 2011, Ranier alleges that Hull addressed Garza regarding several issues including: her use of Facebook during office hours; the quality of apartment make-readies; open work orders for apartments; inordinate overtime by Garza's employees; and failing to enforce company policies with her staff regarding personal calls and Facebook.  *Id.* at p. 5.  Hull acknowledges in her Affidavit that "I advised Ms. Garza that this 'ghetto-ness' would no longer be tolerated, and that she would be terminated if it continued." *Id.* On August 29, 2011, Hull discovered that Garza had posted a deposit to the incorrect apartment and refunded it to the wrong tenant, along with the deposit actually paid by that tenant. *Id.* at p. 6.  Garza was terminated on August 29, 2011.  *Id.*  Garza's Employee Termination Report, under a section entitled "Prior discussion or warnings on this subject, whether oral or written:" states "08/08/2011 Miriam was spoken to about being on Face book during working hours and the 'ghetto-ness' going on in her office would not be tolerated anymore." Exhibit 2 to Plaintiff's Response.

On January 19, 2012, Garza filed a Complaint with the EEOC alleging discrimination based upon race and national origin.  On March 5, 2012, Garza received a right to sue letter from the EEOC.  She filed the instant suit on June 1, 2012, alleging violations of Title VII of the Civil Rights Act of 1964 (Count One)  and 42 U.S.C. § 1981 (Count Two).

## II.  Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all inferences

drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party establishes that there are no factual issues, the burden shifts to the nonmoving party to produce evidence that a genuine issue of material fact exists for trial. The nonmoving party must then "go beyond the pleadings," and by affidavits or other competent summary judgment evidence cite "specific facts" that show there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324. But a district court may not grant a motion for summary judgment merely because it is unopposed. *Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).

### III. Analysis

Defendant Ranier moves for summary judgment on Garza's claims.[2] Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a), makes it unlawful for an employer to discriminate against an employee based on the individual's race, color, religion, sex, or national origin. Intentional discrimination can be proven by either direct or circumstantial evidence. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). The Court's analysis, and the burdens at the summary judgment stage, differs when there is direct evidence of a discriminatory intent from when there is only circumstantial evidence of discrimination. When the summary judgment record contains direct

---

[2]The analysis under Title VII and § 1981 are identical, *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002), the only substantive differences between the two statutes being their respective statute of limitations and the requirement under Title VII that the employee exhaust administrative remedies. *See Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 351 (5th Cir. 2001).

evidence or discrimination, the burden shifts to the employer to show that the same decision would have been made even had there been no discriminatory motive. *Jones v. Robinson Prop. Group*, 427 F.3d 987, 992 (5th Cir. 2005). On the other hand, if there is only circumstantial evidence to support the claim—as is the case in the vast majority of Title VII cases—the case is analyzed according to the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

A.      **Plaintiff's Claim of Direct Evidence of Discrimination**

Direct evidence is evidence, which if believed, proves the fact in question without inference or presumption. *Jones*, 427 F.3d at 992. Garza asserts that Kathy Hull's statement in her Employee Termination Report that Garza's "ghetto-ness" would not be tolerated anymore qualifies as direct evidence of Ranier's discrimination. To be direct evidence, a remark "must be (1) related to the protected class of persons of which the plaintiff is a member, (2) proximate in time to the employment decision, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at issue." *Reilly v. TXU Corp.*, 271 F. App'x 375, 379 (5th Cir. 2008) (citing *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001)).

In this case, the parties dispute only the first factor of the four-part test—whether the remark was "related to the protected class of persons of which the plaintiff is a member." *See Jenkins v. Methodist Hosps. of Dallas, Inc.*, 478 F.3d 255, 261 (5th Cir. 2007). Ranier argues that in order for a protected-class based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that the employee's protected class was a determinative factor in the decision to terminate the employee. Defendants' Opposed Motion for Summary Judgment at p. 4. Ranier relies on various cases in support of this statement. *Moss v. BMC Software, Inc.*, 610 F.3d 917, 929 (5th

Cir. 2010); *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001) (citing *Wyvill v. United Cas. Life Ins. Co.*, 212 F.3d 296, 303 (5th Cir. 2000)). Ranier asserts that the statement contained in the Termination Report that "the 'ghetto-ness' going on in Garza's office would not be tolerated anymore" and the previous comment that Garza's "management style was ghetto" referred not to Garza's race, but to the rundown appearance of the properties Garza managed. Ranier asserts that "ghetto" refers to residential areas that are rundown and trash-strewn. Ranier also notes that cases in which comments containing the word "ghetto" have been viewed as facially discriminatory generally involve African American employees, while Garza is Hispanic.[3]  *See, e.g., Harrington v. Disney Reg'l Entm't, Inc.*, 276 F. App'x 863 (11th Cir. 2007); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337 (5th Cir 2007); *Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 2009 WL 2134601 (5th Cir. 2009); *Williams v. Taco Bell*, 46 F. App'x 732, 2002 WL 1973807 (5th Cir. 2002); *Green v. Harris Publ'ns, Inc.*, 331 F. Supp. 2d 180, (S.D.N.Y. 2004); *Harris v. Wackenhut Servs., Inc.*, 648 F. Supp. 2d 53, (D. D.C. 2009).  Thus, Ranier argues, because the statements by Hull are not "direct and unambiguous" they are insufficient to support a direct evidence case.

Garza, of course, disagrees. Garza asserts that the term "ghetto" was used as a personal reference to her and not to the properties she managed. Garza points out that on the Termination Report the comment is "the 'ghetto-ness' going on in Garza's office would not be tolerated anymore." Additionally, Garza maintains, Ranier has failed to establish as a matter of law that Hull's use of the term "ghetto" was not a racial comment directed at her personally, and thus as a matter of law, summary judgment regarding whether Hull's statements constitute direct evidence of discrimination is inappropriate.

The Court concurs with Garza. When a person with decision making authority, such as Hull, evinces racial animus, that may qualify as direct evidence of discrimination. *See Causey v. Sewell*

---

[3] Garza identifies herself as Mexican American.

5

*Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 290 (5th Cir. 2004); *see also Young v. City of Houston, Tex.*, 906 F.2d 177, 180–81 (5th Cir. 1990) (citing *Kendall v. Block*, 821 F.2d 1142, 1145–46 (5th Cir. 1987)).  It does not appear that the term "ghetto" is viewed as exclusively a slur aimed at African Americans.  *See Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655 (2d Cir. 2012) (half-Anglo half-Latino student recovered on claims of Title VI racial harassment when other students called him "black," "nigger," "gangster," and followed him around with a noose.)  The Fifth Circuit has recognized that the term "ghetto" has innate racial overtones. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (recognizing that a supervisor's reference to inner-city children as "ghetto children" was "perhaps racially inappropriate.") A review of various dictionaries shows that the term "ghetto" is in many, if not most, cases associated with racial groups generally, not just African Americans.  Miriam Webster defines "ghetto" as:

> (1) a quarter of a city in which Jews were formerly required to live; (2) a quarter of a city in which members of a minority group live especially because of social, legal, or economic pressure; (3)(a) an isolated group "a geriatric ghetto"; and (3)(b) a situation that resembles a ghetto especially in conferring inferior status or limiting opportunity.

*Ghetto.* MERRIAM-WEBSTER.COM, http://www.merriam-webster.com (last visited July 11, 2013). The Oxford English Dictionary has two definitions of "ghetto":

> (1) The quarter in a city, chiefly in Italy, to which the Jews were restricted; (2) A quarter in a city, esp. a thickly populated slum area, inhabited by a minority group or groups, usu. as a result of economic or social pressures; an area, etc., occupied by an isolated group; an isolated or segregated group, community, or area.

*Ghetto, n.* OED ONLINE. http://www.oed.com/view/Entry/78056? (last visited July 11, 2013). None of these definitions refer specifically to African Americans—only to racial minorities, which as a Mexican American, Garza undoubtably qualifies.

6

This is not a case where a racial epithet or term was used in the workplace by non-management employees. Hull, who was Garza's manager, referred to the "ghetto-ness" in Garza's office as a reason behind her termination and noted this on her Termination Report. The Fifth Circuit has previously held that any "statement or document which shows on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action" is direct evidence of discrimination. *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003) (citing *Fierros v. Tex. Dept. of Health*, 274 F.3d 187, 192 (5th Cir. 2001)). The comment in the Termination Reports is sufficient to serve as direct evidence of discrimination. Further, there are fact questions that remain regarding whether Ranier would have taken the same action against Garza had there been no idscrimination.

Because this case is before the Court on summary judgment review, the court is required to view the evidence in the light most favorable to Garza, taking the record evidence and all reasonable inferences therefrom in her favor. *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). The parties do not dispute that Hull made the statements in issue. It is inappropriate for the court to make credibility determinations about Hull's intentions or weigh the evidence on summary judgment. *Id.* Upon extensive review of the parties' arguments and the summary judgment evidence submitted in this case, and mindful of the summary judgment standard, the Court finds that Garza has demonstrated direct evidence of discrimination sufficient to deny Ranier's Motion for Summary Judgment.

**B.    Circumstantial Evidence of Discrimination**

When race discrimination claims are based on circumstantial evidence, courts apply the *McDonnell Douglas* burden-shifting framework. *Harrison v. Corr. Corp. of Am.*, 476 F. App'x 40, 43 (5th Cir. 2012). As discussed below, even if there were no evidence of direct discrimination in

this case, and the Court applied the *McDonnell Douglas* analysis, summary judgment is still not appropriate here.

"Under the first step of the *McDonnell Douglas* framework, the plaintiff must establish a prima facie case." *Id.* "After the plaintiff establishes a prima facie case, the burden 'shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the [action].' " *Id.* (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "If the defendant offers such a reason, the burden shifts back to the plaintiff to show that either (1) the defendant's alleged justification was pretext for discrimination, or (2) that the defendant's reason, although true, is only one of the reasons for its conduct and that another motivating factor was the plaintiff's protected characteristic." *Bissett v. Beau Rivage Resorts, Inc.*, 442 F. App'x 148, 151–52 (5th Cir. 2011) (citing *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007)). The plaintiff bears the ultimate burden of persuading the trier of fact, by a preponderance of the evidence, that the employer intentionally discriminated against her because of her protected status. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219–20 (5th Cir. 2001).

In this case, Ranier assumes, *arguendo*, that Garza can establish a prima facie case of race discrimination. Garza also in turn assumes, *arguendo*, that Ranier can articulate a legitimate, nondiscriminatory reason for Garza's termination. In support of meeting its burden of articulating some legitimate, nondiscriminatory reason for Garza's termination, Ranier asserts that Garza was terminated for not following company policy, negligence in performing duties, and failing to follow instructions. If the employer sustains its burden, the prima facie case dissolves, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic.

8

*Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). In a mixed-motive case, if the plaintiff shows that the illegal discrimination was a motivating factor, the defendant must respond with evidence that the same employment decision would have been made regardless of discriminatory animus. *Id.*

Garza argues that the evidence she offers as direct evidence of Ranier's discrimination also supports her circumstantial evidence mixed-motive case. The Court concurs and finds that Garza has created fact issues as to whether Ranier discriminated against Garza based upon her race. The Court finds that summary judgment is inappropriate in this case under the *McDonnell Douglas* analysis as well as the direct evidence analysis above.

**C.     Same Actor Inference**

Ranier asserts that it is entitled to the same actor inference because Kathy Hull both hired and terminated Garza. The "same actor inference" rule was first adopted by the Fifth Circuit in *Brown v. CSC Logic, Inc.,* 82 F.3d ___ (5th Cir. 1996). The court explained this rule as follows: "claims that employer animus exists in termination but not in hiring seem irrational. From the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job." 82 F.3d at 658 (5th Cir. 1996) (quoting *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991)) (quotation marks and citations omitted). According to *Proud*, "The relevance of the fact that the employee was hired and fired by the same person within a relatively short time span comes in at the third [or pretext] stage of the [*McDonnell Douglas* prima facie case] analysis." 945 F.2d at 798. When the same supervisory employee hires and fires a plaintiff within a short period of time, "a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." *Id.* at 797. While evidence that the same actor who hires and fires an employee

9

creates a strong inference that "the employer's stated reason for acting against the employee is not pretextual" such that discrimination was not a factor in the employment decision, the inference does not automatically dispose of a plaintiff's discrimination claim. *Id.* at 798.

In expressing its approval of *Proud* and the "same actor inference" rule, the court in *Brown* did "not rule out the possibility that an individual could prove a case of discrimination in a similar situation." 82 F.3d at 658. The court instead held only "that the facts in this particular case are not sufficiently egregious to overcome the inference that CSC Logic's stated reason for discharging Davis was not pretext for age discrimination." *Id.* The court therefore concluded that the plaintiff "failed to meet his evidentiary burden on the issue of pretext." *Id.*

Thus, evidence that the same actor hired and fired the plaintiff does not automatically dispose of a plaintiff's discrimination claim but creates only a strong inference that discrimination was not a determining factor. *Id.*; *Proud*, 945 F.2d at 797.[4] The parties in this case argue about whether the approximately three and a half years of Garza's employment constitutes a short period of time sufficient to establish the same actor inference. Plaintiff asserts that the passage of time diminishes the same actor inference. *See Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 464 (6th Cir. 1995). Because of the passage of time, the Court finds that the same actor inference is inapplicable or at best so weak as to not undermine the issue of pretext in this case. Moreover, even when the same actor inference is applicable, it may be overcome by a change in circumstances between the time of hiring and firing or by other egregious facts from which a discriminatory action could still be proven.

---

[4] *Brown* has been abrogated insofar as it established a formal four-part test to determine if age-related remarks by an employer's personnel may serve as sufficient evidence of age discrimination, but it remains authoritative in other respects. *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 n. 10 (5th Cir. 2000).

*Proud, v. Stone*, 945 F.2d at 797–98. Hull's "ghetto" comments are sufficient to overcome any same actor inference.

Based upon the foregoing, Defendants' Opposed Motion for Summary Judgment (Dkt. No. 17) is **DENIED**.

SIGNED this 31st day of July, 2013.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE